IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| CATHERINE L. WENNER | ) | |
| | ) | |
| v. | ) | No. 3:09-1153 |
| | ) | Judge Nixon/Bryant |
| SOCIAL SECURITY ADMINISTRATION | ) | |

To:     The Honorable John T. Nixon, Senior Judge

## REPORT AND RECOMMENDATION

This is a civil action filed pursuant to 42 U.S.C. §§ 405(g) and 1383(c), to obtain judicial review of the final decision of the Social Security Administration ("SSA" or "the Administration"), through its Commissioner, denying plaintiff's application for disability insurance benefits ("DIB") and supplemental security income ("SSI"), as provided under the Social Security Act ("the Act"). The case is currently pending on plaintiff's motion for judgment on the administrative record (Docket Entry No. 14), to which defendant has responded (Docket Entry No. 16). Upon consideration of these papers and the transcript of the administrative record (Docket Entry No. 12),[1] and for the reasons given below, the undersigned recommends that plaintiff's motion for judgment be GRANTED, and that the decision of the SSA be REVERSED and the cause REMANDED for further administrative proceedings consistent with this report.

---

[1] Referenced hereinafter by page number(s) following the abbreviation "Tr."

## I. Introduction

Plaintiff filed her DIB and SSI applications on August 21, 2006, alleging a closed period of disability from November 1, 2004, to September 30, 2006. (Tr. 181) Her claim was denied initially and upon reconsideration at the state agency level of review, whereupon plaintiff requested a de novo hearing before an Administrative Law Judge ("ALJ"). The ALJ heard the case on February 18, 2009, including testimony from plaintiff and an impartial vocational expert. (Tr. 19-34) Plaintiff was represented by her current counsel at the hearing, though counsel had been on the case for only two weeks prior to the hearing date. (Tr. 21, 80) The hearing was conducted by videoconference, with plaintiff and her attorney in Nashville, Tennessee and the ALJ and vocational expert in Paducah, Kentucky. (Tr. 21) At the conclusion of the hearing, the ALJ took the matter under advisement until May 12, 2009, when she issued a written decision denying plaintiff's claim to disability. (Tr. 10-18) That decision contains the following enumerated findings:

1. The claimant meets the insured status requirements of the Social Security Act through March 31, 2009.

2. The claimant did not engage in substantial gainful activity from November 1, 2004, to September 30, 2006, the closed period at issue (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

3. During the closed period at issue, the claimant had the following severe impairments: major depressive disorder and anxiety disorder (20 CFR 404.1520(c) and 416.920(c)). The claimant did not have a "severe" physical impairment(s) during the closed period at issue.

4. The claimant did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1525, 404.1526, 416.925 and 416.926).

5. After careful consideration of the entire record, the undersigned finds that,

> during the closed period at issue, the claimant had the residual functional capacity to perform a full range of work at all exertional levels but with some nonexertional (mental) limitations. She was limited to non-complex tasks requiring no more than occasional interaction with the general public.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7. The claimant was born on February 1, 1975, and was 29 years old, which is defined as a younger individual age 18-44, on the alleged disability onset date. (20 CFR 404.1563 and 416.963).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569a, 416.969, and 416.969a).

11. The claimant has not been under a disability, as defined in the Social Security Act, from November 1, 2004, through September 30, 2006, the closed period at issue (20 CFR 404.1520(g) and 416.920(g)).

(Tr. 12, 13, 16, 17)

On October 30, 2009, the Appeals Council denied plaintiff's request for review of the ALJ's decision (Tr. 1-3), thereby rendering that decision the final decision of the Administration. This civil action was thereafter timely filed, and the court has jurisdiction. 42 U.S.C. §§ 405(g), 1383(c)(3). If the ALJ's findings are supported by substantial evidence, based on the record as a whole, then those findings are conclusive. Id.

## II. Review of the Record

Notes from her treating chiropractor reveal that plaintiff had a history of lower back pain (Tr. 203-08, 212-37) before injuring her back while working in November 2004 (Tr. 239). When an MRI was performed in January 2005, it showed reversal of the lumbar lordosis and disc herniations at the T12-L1 and L5-S1 spinal levels, with neural foraminal narrowing and possible nerve root involvement. (Tr. 278) A followup MRI study conducted on July 12, 2005, confirmed that there was a 2 mm disc herniation that had not resolved. (Tr. 279) Plaintiff was seen for the last time by her chiropractor on July 15, 2005, when it was noted that she had pain across her lower back with spasms into the right gluteus, and positive straight leg raise test results at thirty degrees. (Tr. 277) This note further reflects that the chiropractor administered a lumbosacral adjustment that day, and discussed the January and July MRI findings with plaintiff as well as possible treatment options of medication, physical therapy, and/or surgery.

There are no further treatment records until December 8, 2005, when plaintiff sought treatment with Dr. Dejak, complaining of bad low back pain. Dr. Dejak noted that plaintiff was to continue with the medications Flexeril and Vicodin "for now." (Tr. 326) On January 4, 2006, plaintiff was noted by Dr. Dejak to be in tears from the pain in her back, and to be getting no relief from Vicodin. (Tr. 324) Dr. Dejak's examination revealed tenderness in plaintiff's upper lumbar spine, positive straight leg raise test results, and radicular symptoms of pain and numbness in the left foot. Plaintiff's pain medication was switched to Percocet, and a repeat MRI was ordered. Id. That repeat MRI was conducted on January 6, 2006, and revealed that plaintiff continued to have a 2 mm right parasagittal disc herniation

4

at the T12-L1 level, but that there no longer appeared to be narrowing of the neural foramina or spinal canal  (Tr. 310)

On January 23, 2006, Dr. Dejak's notes related to plaintiff's lower back pain document that physical therapy was only slightly helpful, and that plaintiff had decided to have bilateral breast reduction surgery.  (Tr. 322)  On March 24, 2006, plaintiff underwent the breast reduction surgery (Tr. 285), with good results.  (Tr. 285)

Dr. Dejak first diagnosed plaintiff with migraine headaches on April 24, 2006. (Tr. 318)  Plaintiff continued to complain of these headaches to Dr. Dejak until July 13, 2006, when she had her last office visit prior to relocating to Tennessee.  (Tr. 313-17)  On July 4, 2006, plaintiff had been to the Bedford Medical Center emergency room complaining of an acute migraine headache that had begun the day before.  (Tr. 300)  She stated that she had just been diagnosed with migraines two months prior and had taken her prescription medication, Duradrin, along with Motrin and Tylenol without relief.  Id.  Intravenous medication was provided, and plaintiff did not require admission to the hospital.  (Tr. 302)  A CT scan of the brain was conducted, with no acute findings.  (Tr. 299, 302)

On November 4, 2006, plaintiff was seen by Dr. Emelito Pinga for a consultative physical examination.  (Tr. 412-17)  Dr. Pinga noted that plaintiff had had laparoscopic surgery and fallopian tubal ligation in February 2006, breast reduction surgery in March 2006, and hysterectomy surgery in September 2006.  (Tr. 414)  She was taking propoxyphene (100 mg tablets) and ibuprofen (600 mg tablets) as needed for her back pain, with partial relief of the pain.  (Tr. 412-13)  She was also taking migraine headache medications as needed, with partial pain relief, as well as other daily medications.  (Tr. 414) After obtaining largely normal results on physical examination, Dr. Pinga gave the following

5

diagnostic impressions:

>    1.   Degenerative arthritis of the lumbar spine, degenerative disc disease, status post epidural steroid injection, status post physical therapy, on therapy with propoxyphene and ibuprofen tablet.
>    2.   Irritable bowel syndrome, colitis, on therapy with dicycolmine tablet, by history.
>    3.   Endometriosis, status post hysterectomy, by history.
>    4.   Migraine headaches, on therapy with Duradrin and Midrin tablet.

(Tr. 417) Dr. Pinga opined that plaintiff could sit for six hours in an eight-hour workday, and walk or stand for four hours in an eight-hour workday. He further opined that she would be limited to frequent lifting of five to ten pounds, and occasional lifting of fifteen pounds.

On November 28, 2006, a file review physician consulted by the state agency, Dr. William Downey, opined that plaintiff's migraine headaches were not expected to last twelve consecutive months, and so were nonsevere. He further opined that plaintiff's back pain was severe, but that it should improve to nonsevere within twelve months. (Tr. 419-22) This opinion was affirmed by another file review physician, Dr. Lloyd Walwyn, on April 25, 2007. (Tr. 444-47)

Plaintiff does not challenge the agency's treatment of her mental impairments, and the limited medical evidence pertaining to these impairments is therefore not reviewed here.

At her hearing, plaintiff testified that her breast reduction surgery was in response to her back problems, and that the surgery had been helpful in relieving her neck and back symptoms. (Tr. 25-26) Plaintiff testified that, during the period in which she

6

alleges disability, she was able to stand comfortably for no more than 15 to 20 minutes, and sit comfortably for about 25 to 30 minutes. (Tr. 27) She testified that she would have to lie down at least four times per day for pain relief. (Tr. 28) She would have to take multiple breaks in order to complete light household chores. (Tr. 28-29) She further testified that she did not like to take the narcotic pain medication she had been prescribed during this period because of her fear of becoming addicted to them, as well as because of their side effects and the impact of those side effects on her ability to care for her young children. (Tr. 29)

Also at plaintiff's hearing, the vocational expert testified that a person who was limited to the performance of non-complex jobs that involve no more than occasional interaction with the general public would not be able to perform plaintiff's past relevant work. (Tr. 31) The expert identified two jobs that would allow for such limitations: the light job of assembler (2,100 jobs in the regional economy and over 102,000 nationally) and the sedentary job of escort vehicle driver (2,000 jobs in the regional economy and over 141,000 nationally). (Tr. 31-32) The expert further testified that the consistent need to lie down four times per day for pain relief would preclude all work. (Tr. 32-33)

### III. Conclusions of Law

#### A. Standard of Review

This court reviews the final decision of the SSA to determine whether that agency's findings of fact are supported by substantial evidence in the record and whether the correct legal standards were applied. Elam ex rel. Golay v. Comm'r of Soc. Sec., 348 F.3d 124, 125 (6th Cir. 2003). "Substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept

7

as adequate to support a conclusion.'" Rogers v. Comm'r of Soc. Sec., 486 F.3d 234, 241 (6th Cir. 2007)(quoting Cutlip v. Sec'y of Health & Human Servs., 25 F.3d 284, 286 (6th Cir. 1994)). Even if the evidence could also support a different conclusion, the SSA's decision must stand if substantial evidence supports the conclusion reached. Her v. Comm'r of Soc. Sec., 203 F.3d 388, 389 (6th Cir. 1999).

B. Proceedings at the Administrative Level

The claimant has the ultimate burden to establish an entitlement to benefits by proving his or her "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The claimant's "physical or mental impairment" must "result[] from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." Id. at § 423(d)(3). In proceedings before the SSA, the claimant's case is considered under a five-step sequential evaluation process, described by the Sixth Circuit Court of Appeals as follows:

> 1) A claimant who is engaging in substantial gainful activity will not be found to be disabled regardless of medical findings.
>
> 2) A claimant who does not have a severe impairment will not be found to be disabled.
>
> 3) A finding of disability will be made without consideration of vocational factors, if a claimant is not working and is suffering from a severe impairment which meets the duration requirement and which meets or equals a listed impairment in Appendix 1 to Subpart P of the Regulations. Claimants with lesser impairments proceed to step four.
>
> 4) A claimant who can perform work that he has done in the past will not be found to be disabled.
>
> 5) If a claimant cannot perform his past work, other factors including age,

education, past work experience and residual functional capacity must be
considered to determine if other work can be performed.

Cruse v. Comm'r of Soc. Sec., 502 F.3d 532, 539 (6th Cir. 2007)(citing, e.g., Combs v. Comm'r of Soc. Sec., 459 F.3d 640, 642-43 (6th Cir. 2006)(en banc)); 20 C.F.R. §§ 404.1520(b)-(f), 416.920 (b)-(f).

The SSA's burden at the fifth step of the evaluation process can be carried by relying on the medical-vocational guidelines, otherwise known as "the grids," but only if the claimant is not significantly limited by a nonexertional impairment, and then only when the claimant's characteristics identically match the characteristics of the applicable grid rule. See Wright v. Massanari, 321 F.3d 611, 615-16 (6th Cir. 2003). Otherwise, the grids cannot be used to direct a conclusion, but only as a guide to the disability determination. Id.; see also Moon v. Sullivan, 923 F.2d 1175, 1181 (6th Cir. 1990). In such cases where the grids do not direct a conclusion as to the claimant's disability, the SSA must rebut the claimant's *prima facie* case by coming forward with proof of the claimant's individual vocational qualifications to perform specific jobs, which is typically obtained through vocational expert ("VE") testimony. See Wright, 321 F.3d at 616 (quoting Soc. Sec. Rul. 83-12, 1983 WL 31253, *4 (S.S.A.)); see also Varley v. Sec'y of Health & Human Servs., 820 F.2d 777, 779 (6th Cir. 1987).

In determining residual functional capacity ("RFC") for purposes of the analysis required at steps four and five above, the SSA is required to consider the combined effect of all the claimant's impairments, mental and physical, exertional and nonexertional, severe and nonsevere. See 42 U.S.C. §§ 423(d)(2)(B), (5)(B); Foster v. Bowen, 853 F.2d 483, 490 (6th Cir. 1988).

### C. Plaintiff's Statement of Errors

Plaintiff raises three arguments for reversal of the ALJ's decision: (1) that the ALJ erroneously failed to question the vocational expert as to the consistency of his testimony with the Dictionary of Occupational Titles ("DOT"), thereby breaching the duty imposed by Social Security Ruling ("SSR") 00-4p; (2) that the ALJ erred in finding no severe physical impairment and no exertional limitation to any particular level of work; and (3) that the ALJ did not properly evaluate plaintiff's credibility. As explained below, the undersigned is persuaded that the ALJ's decision lacks substantial evidentiary support, beginning with her finding of no severe physical impairment, and culminating in the lack of sufficient grounds for her step five finding of other available work which plaintiff could perform.

*1 Findings of No Severe Physical Impairment, No Exertional Limitation*

Plaintiff argues that the ALJ ignored significant evidence of lower back pain and migraine headache pain, basing her determination that plaintiff was not significantly, physically limited solely upon the fact that, following the settlement of her workers' compensation claim, she sought no further treatment during the relevant period. However, the ALJ's decision cannot be fairly said to dwell on the fact that treatment for plaintiff's back impairment was only pursued while her workers' compensation claim was pending; there is but one reference to these matters coinciding. (Tr. 13) Nor is plaintiff's testimony to dire limitations due to her back pain uncontradicted, as argued in her brief. Rather, the ALJ found contradiction between the testimony of plaintiff on the one hand, and the record of conservative medical treatment on the other.

However, conservative though plaintiff's treatment may have been, the record

does not support the ALJ's finding that plaintiff's back pain did not pose significant work-related limitations for any continuous 12-month period. Plaintiff had a history of lower back pain (Tr. 203-08, 212-37) before injuring her back while working in November 2004 (Tr. 239). When an MRI was performed in January 2005, it showed reversal of the lumbar lordosis and disc herniations at the T12-L1 and L5-S1 spinal levels, with neural foraminal narrowing and possible nerve root involvement which the ALJ failed to recognize. (Tr. 13, 278) While the ALJ noted that the record only showed treatment with chiropractic adjustments, there are a number of references in the chiropractor's notes to plaintiff receiving narcotic pain medications through another physician. (E.g., Tr. 252, 258, 262, 263, 274) A followup MRI study conducted on July 12, 2005, confirmed that there was a 2 mm disc herniation that had not resolved. (Tr. 279) Plaintiff was seen for the last time by her chiropractor on July 15, 2005, when it was noted that she had pain across her lower back with spasms into the right gluteus, and positive straight leg raise test results at thirty degrees. (Tr. 277) This note further reflects that the chiropractor administered a lumbosacral adjustment that day, and discussed the January and July MRI findings with plaintiff as well as possible treatment options of medication, physical therapy, and/or surgery.

There are no further treatment records until December 8, 2005, when plaintiff sought treatment with Dr. Dejak, complaining of bad low back pain. Dr. Dejak noted that plaintiff was to continue with the medications Flexeril and Vicodin "for now." (Tr. 326) On January 4, 2006, plaintiff was noted by Dr. Dejak to be in tears from the pain in her back, and to be getting no relief from Vicodin. (Tr. 324) Dr. Dejak's examination revealed tenderness in plaintiff's upper lumbar spine, positive straight leg raise test results, and radicular

symptoms of pain and numbness in the left foot. Plaintiff's pain medication was switched to Percocet, and a repeat MRI was ordered. Id. That repeat MRI was conducted on January 6, 2006, and revealed that plaintiff continued to have a 2 mm right parasagittal disc herniation at the T12-L1 level, but that there no longer appeared to be narrowing of the neural foramina or spinal canal (Tr. 310) The ALJ noted that plaintiff was never referred for a surgical evaluation, but only received treatment with Naprosyn, Flexeril, and physical therapy. However, it is clear that plaintiff was also being treated with narcotics such as Percocet, which Dr. Dejak prescribed on an as needed basis and which plaintiff reported taking 2-3 times per day (Tr. 321, 323, 324), as it did provide her some pain relief. (Tr. 263) On January 23, 2006, Dr. Dejak's notes related to plaintiff's lower back pain document that physical therapy was only slightly helpful, and that plaintiff had decided to have bilateral breast reduction surgery. (Tr. 322)

On March 24, 2006, plaintiff underwent the breast reduction surgery (Tr. 285), with good results. Citing the evidentiary exhibit pertaining to this surgery, the ALJ found that "[t]here is no direct correlation between the claimant's breast surgery and her back injury." (Tr. 14) She further found as follows:

> While the claimant might have had some short-term restrictions/limitations immediately following her back injury, breast reduction surgery and hysterectomy, there is no basis for a finding any of these limitations lasted a continuous 12-month period. The claimant's back impairment responded well to conservative treatment. Her breast reduction surgery and hysterectomy were without complication and she recuperated as would be expected, with good results and well within 12 months.

Id.

While plaintiff's breast reduction surgery was not recommended as treatment for her disc injury, the two events are not unrelated. Clearly, the weight of overdeveloped breasts can cause or contribute to back pain, as recognized by the ALJ and in the medical evidence. (Tr. 14, 285) The record shows that plaintiff had preexisting pain in her back, presumably due at least in part to her overdeveloped breasts, and it simply cannot be said with any reasonable degree of certainty that the effects of the workplace injury to her upper and lower lumbar vertebrae were not exacerbated by this condition both during the immediate aftermath of the injury, and up until the time of her surgery. The ALJ's attempt to separate the period of plaintiff's otherwise severe back pain into "injury-related" (November 2004-July 2005) and "breast size-related" (December 2005-March 2006) compartments that are each of less than 12 months duration does not pass muster, particularly in view of the low threshold of the severity analysis.[2] Accordingly, the ALJ's finding of no severe back impairment is not supported by substantial evidence and should not be affirmed.

## 2. Vocational Expert Testimony

SSR 00-4p imposes an "affirmative responsibility" upon ALJs who receive vocational expert testimony as to the requirements of a job, "to ask about any possible conflict between that [testimony] and information provided in the DOT." 2000 WL

---

[2] "Step two has been described as a '*de minimis* hurdle'; that is, 'an impairment can be considered not severe only if it is a slight abnormality that minimally affects work ability regardless of age, education, and experience.'" Rogers v. Comm'r of Soc. Sec., 486 F.3d 234, 243 n.2 (6th Cir. 2007)(quoting Higgs v. Bowen, 880 F.2d 860, 862 (6th Cir. 1988)); Soc. Sec. Rul. 85-28, 1985 WL 56856 (S.S.A.). In keeping with this minimalist view of regulatory "severity," the Sixth Circuit has liberally construed this standard in favor of claimants. Griffeth v. Comm'r of Soc. Sec., 217 Fed.Appx. 425, 428 (6th Cir. Feb. 9, 2007).

1898704, at *4. Accord Lindsley v. Comm'r of Soc. Sec., 560 F.3d 601, 606 (6th Cir. 2009). The ALJ here did not ask the expert on the record if his testimony was consistent with the DOT, though she made a finding of such consistency in her written decision. Thus, the ALJ failed to carry out her affirmative responsibility under the ruling. However, courts have held such a failure to be subject to harmless error review, particularly in cases where no particular inconsistency between the expert's testimony and the DOT has been identified. Fleeks v. Comm'r of Soc. Sec., 2009 WL 2143768, at *6-7 (E.D. Mich. July 13, 2009) (citing cases). Here, as in Fleeks, the argument for reversal rests on a point of technical error, with no showing of any actual conflict between the testimony of the vocational expert and the provisions of the DOT, and with no record of any objection from counsel to either the ALJ or the Appeals Council over such defect in the expert's testimony. See id. at *7. Accordingly, the undersigned finds that the ALJ's failure to ask the vocational expert about the possibility of conflict between his testimony and the information provided in the DOT amounts to harmless error.

However, the vocational testimony is not otherwise sufficient to support the ALJ's decision in this case. In its brief (Docket Entry No. 16 at 12 n.4), the government notes that "even if the ALJ had found plaintiff limited to the lowest exertional range, there would still be a significant number of jobs that she could perform," based on the expert's identification of 2,000 escort vehicle driver jobs in the region and 141,000 such jobs in the nation. (Tr. 17, 31-32) Under the Social Security Act, once a claimant has demonstrated the inability to return to her past relevant work, the SSA must demonstrate the availability of other work existing in significant numbers in the national economy. "The Social Security

Act, as amended, provides that 'work which exists in the national economy means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.'" Harmon v. Apfel, 168 F.3d 289, 292 (6th Cir. 1999) (quoting 42 U.S.C. § 423(d)(2)(A)). Such work does not include "[i]solated jobs that exist only in very limited numbers in relatively few locations outside of the region where [plaintiff] live[s]...." Id. (quoting 20 C.F.R. § 404.1566(b)).

       To begin with, the expert testimony in this case does not specify which region's economy boasts the 2,000 available escort vehicle driver jobs. The ALJ's decision indicates that these jobs are available in the state of Kentucky (Tr. 17),[3] where both the ALJ and the vocational expert were situated for the videoconference by which plaintiff's hearing was conducted. (Tr. 21) However, the region of Paducah, Kentucky is not the region where plaintiff lives. While the expert also identified over 141,000 escort vehicle driver jobs available in the national economy (Tr. 32), he prefaced this testimony by noting that the work he identified was isolated. (Tr. 31) Regardless of the raw numbers, the government's step five burden of identifying other available jobs cannot be carried if the jobs identified are isolated in relatively few locations outside of the region where plaintiff lives. Harmon, supra. In short, the vocational proof in this case is insufficient to support the step five finding that plaintiff is not disabled because she remains able to perform a significant number of other jobs in the economy.

---

[3]The ALJ's decision identifies the light job of assembler as available in the state of Tennessee in numbers totaling 2,100. Again, however, the expert did not himself identify the regional market where these jobs are located.

## IV. Recommendation

In light of the foregoing, the Magistrate Judge recommends that plaintiff's motion for judgment on the administrative record be GRANTED, and that the decision of the SSA be REVERSED and the cause REMANDED for further administrative proceedings consistent with this report.

Any party has fourteen (14) days from receipt of this Report and Recommendation in which to file any written objections to it with the District Court. Any party opposing said objections shall have fourteen (14) days from receipt of any objections filed in which to file any responses to said objections. Failure to file specific objections within fourteen (14) days of receipt of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation. Thomas v. Arn, 474 U.S. 140 (1985); Cowherd v. Million, 380 F.3d 909, 912 (6th Cir. 2004)(en banc).

ENTERED this 22nd day of April, 2011.

       s/ John S. Bryant
       JOHN S. BRYANT
       UNITED STATES MAGISTRATE JUDGE